UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| In re:  Dori Danyelle Wingate | Case No. 15-35033-KLP |
| | Chapter 13 |
| **Debtors,** | |
| **Dori Danyelle Wingate, Individually and on Behalf of a class of similarly situated individuals,** | APN: 17-04453-KLP |
| **Plaintiff,** | |
| v. | |
| **BLUECHIP FINANCIAL, d/b/a SPOTLOAN,** | |
| and | |
| **AMERICAN INFOSOURCE LP,** | |
| **Defendants.** | |

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION
AND DISMISS OR STAY THIS ACTION PENDING BINDING ARBITRATION**

Defendant American Infosource LP ("AIS"), by counsel, hereby moves this Court, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*., to compel arbitration of this proceeding and either stay or dismiss this action, for the reasons set forth below.

Jason E. Manning (VSB No. 74306)
Maryia Y. Jones (VSB No. 78645)
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone: (757) 687-7564
Facsimile: (757) 687-1524
E-mail: jason.manning@troutmansanders.com
E-mail: maryia.jones@troutmansanders.com

## INTRODUCTION

This putative Class Action Complaint arises from a loan agreement (the "Loan Agreement) between Plaintiff Dori Danyelle Wingate ("Plaintiff") and Defendant Blue Chip Financial d/b/a Spotloan ("Spotloan") which is organized under the laws of the Turtle Mountain Band of Chippewa Indians.

As an agent for Spotloan, AIS filed Proofs of Claim in Plaintiff's ongoing Chapter 13 bankruptcy case. *In re Wingate*, No. 15-bk-3503. In this adversary proceeding, Plaintiff alleges that the Proofs of Claim "intentionally and willfully misrepresented that no interest was included" in the claimed amount. Compl. ¶ 28. On the basis of these allegations, Plaintiff brings claims against AIS for violations of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, *et seq.*, and claims for violations of Fed. R. Bankr. P. 3001 against Spotloan. *Id*. ¶¶ 48-79.

Plaintiff filed the instant adversary proceeding on June 13, 2017. AIS' responsive pleading is due today and is being filed concurrently herewith. On July 28, AIS' counsel contacted Plaintiff's counsel to request Plaintiff's consent to arbitration pursuant to a binding Arbitration Clause and Jury Waiver (the "Arbitration Clause") included in the Loan Agreement. Plaintiff's counsel responded the same day by declining to submit this matter to arbitration. AIS now moves this Court to compel arbitration under the Arbitration Clause and the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA").

This Court should compel arbitration of Plaintiff's FDCPA claims against AIS because these claims plainly fall within the scope of the valid and enforceable Arbitration Clause and meet each of the four prerequisites to arbitration.

    (1)    a dispute exists between Plaintiff and AIS as evidenced by the Complaint;

    (2)    the dispute is subject to a written, binding Arbitration Clause;

(3) the loan transaction at issue involves interstate commerce—a loan was extended to Plaintiff who is a citizen of Virginia by Spotloan which is located in North Dakota and Proofs of Claim were filed by AIS which is located in Texas; and

(4) Plaintiff refused to arbitrate the dispute.

Despite Plaintiff's contentions in the Complaint to the contrary, the Arbitration Clause is valid and enforceable, and Plaintiff's reliance on the decision by the Fourth Circuit Court of Appeals in *Dillon v. BMO Harris Bank, N.A.*, 856 F.3d 330 (4th Cir. 2017) is inapposite because the Arbitration Clause does not attempt to waive Plaintiff's federal substantive rights in favor of the tribal law. Thus, a doctrine of prospective waiver is not implicated and does not bar enforcement of the Arbitration Clause. Should the Court find the choice of law clause unenforceable, the appropriate remedy is to sever the clause and compel arbitration.

## ARGUMENT

"State and federal courts must enforce the FAA with respect to all arbitration agreements covered by that statute." *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 530-31 (2012). The FAA provides, in relevant part:

> [i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.

9 U.S.C. § 3.

The Supreme Court of the United States has emphasized that the FAA represents a "liberal federal policy favoring arbitration" and has clearly recognized a presumption that disputes between parties to an arbitration agreement should be resolved in an arbitral forum. *See*

3

*Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000).  The presumption that parties to an arbitration agreement intended their disputes to be resolved through arbitration is so strong that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Potenciano Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 368-69 (4th Cir 2012) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. 1, 24-25 (1983)).

"Agreements to arbitrate are construed according to the ordinary rules of contract interpretation, as augmented by a federal policy requiring that all ambiguities be resolved in favor of arbitration."  *Choice Hotels*, 252 F.3d 707, 710 (4th Cir. 2001) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944–45 (1995)).  Parties to a contract are generally "free within bounds to use a choice of law clause in an arbitration agreement to select which local law will govern the arbitration" because such provisions contribute to "predictability and thus efficiency" to help resolve parties' disputes.  *Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 675 (4th Cir. 2016) (citing *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 697 n.7 (4th Cir. 2012)).

According to the Fourth Circuit Court of Appeals, arbitration should be compelled under the FAA where the movant can demonstrate (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of a party to arbitrate the dispute.  *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991).  Each of these four elements is met in this case.

1. **<u>A dispute exists between the parties.</u>**

There is clearly a dispute between the parties. Plaintiff has filed a Class Action Complaint against the Defendants alleging, *inter alia*, violations of the FDCPA based on the Proofs of Claim filed by AIS as an agent for Spotloan. Compl. ¶¶ 47-62. AIS denies that Plaintiff is entitled to the relief requested in the Complaint and denies any allegations of wrongdoing. Thus, there is a dispute between Plaintiff and AIS that could be efficiently resolved through arbitration.

2. **<u>The disputes between Plaintiff and AIS are subject to an enforceable, binding arbitration agreement.</u>**

The claims alleged by Plaintiff in the Complaint are subject to a written arbitration agreement. Namely, the Loan Agreement signed by Plaintiff included, within its terms, a binding Arbitration Clause, which provides that, by accepting this Clause, Plaintiff agrees to arbitrate, and waives the right to litigate, disputes. Compl. Ex. 2, p. 9, ECF No. 1-2. The term "disputes" has "the broadest possible meaning," including "all claims even indirectly related to your … agreements with us." *Id*. at p. 10. The Arbitration Clause applies not just to Plaintiff and Spotloan, but also to "their successors and assigns, along with any third parties related to any Dispute." *Id.* at p. 9. Plaintiff's claims are plainly related to the Loan Agreement and AIS is a named Defendant in the instant action that arises from the Loan Agreement.

Therefore, the second element is satisfied. Despite this undeniable conclusion, Plaintiff asserts in the Complaint that the arbitration agreement is invalid under the Fourth Circuit Court of Appeals' recent decision in *Dillon*, 856 F.3d 330. Compl. ¶¶ 40-41. Plaintiff is wrong.

5

### a. The Arbitration Clause is enforceable as written.

Plaintiffs' reliance on *Dillon* is misplaced because the terms of an arbitration agreement in *Dillon* are materially different from the Arbitration Clause that does not seek to disclaim application of any federal laws.

In *Dillon*, the Fourth Circuit applied a "prospective waiver doctrine" to determine whether the arbitration agreement was enforceable. *Id*. at 332 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985); *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2310 (2013)). As the court in *Dillon* accurately stated, pursuant to the prospective waiver doctrine "courts will not enforce an arbitration agreement if doing so would prevent a litigant from vindicating ***federal substantive statutory rights***. 856 F.3d at 332 (emphasis added) (citing *Am. Express Co.*, 133 S. Ct. at 2310; *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 273-74 (2009); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991)). The prospective waiver doctrine is meant to preclude attempts to "convert a choice of law clause into a choice of no law clause" and to prevent such attempts "to renounce the authority of the ***federal statutes***." *Hayes*, 811 F.3d at 675 (emphasis added, citations omitted); *see also 14 Penn Plaza LLC*, 556 U.S. at 273-74 (stating that "a substantive waiver of ***federally protected civil rights*** will not be upheld").

Prospective waiver plainly does not apply to waivers of ***state*** laws and the undersigned is not aware of any case law to the contrary. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (holding that FAA preempts state laws hostile to arbitration). This is especially true here where Plaintiff is not alleging any claims under state law but instead is seeking to enforce her rights under a federal consumer protection statute, the FDCPA. Therefore, the Arbitration

6

Clause does not "prevent [Plaintiff] from vindicating [her] federal substantive statutory rights" in any way. *Dillon*, 856 F.3d at 332 (double emphasis added).

In both *Dillon* and *Hayes*, the Fourth Circuit found the particular arbitration agreements unenforceable not because of a waiver of any state laws, but because of a prospective waiver of substantive federal rights. In *Dillon*, both an underlying loan agreement and arbitration agreement required application of tribal law and disclaimed application of state *and* **federal law**. *Id*. at 331. The arbitration agreement further provided that "any dispute . . . will be resolved by arbitration in accordance with the [tribal law]" and that the arbitrator must apply the tribal law, to the exclusion of any other law. *Id*. Further, even if a borrower wanted to opt out of arbitration, the arbitration provision in *Dillon* stated that "'any disputes . . . shall nonetheless be governed under the laws of the Otoe-Missouria Tribe of Indians and must be brought within the court system thereof.'" *Id*. (quoting the arbitration agreement.)

In determining whether the arbitration clause was enforceable, the Fourth Circuit referred back to its own decision in *Hayes*, in which the court applied the prospective waiver doctrine to another arbitration agreement. *Id*. at 333. In *Hayes*, the court "observed that the language disclaiming any law other than the tribal law 'almost surreptitiously waive[d] a potential claimant's ***federal rights*** through the guise of a choice of law clause' and 'flatly and categorically renounce[d] the authority of the federal statutes.'" *Dillon,* 856 F.3d at 332 (emphasis added) (quoting *Hayes*, 811 F.3d at 675). Because such language took the "'plainly forbidden' step of prospectively waiving federal substantive rights," the court concluded that the challenged choice of law provision was unenforceable as a matter of law. *Hayes*, 811 F.3d at 675. The language at issue in *Dillon* was "not distinguishable in substance from the related provisions" in *Hayes*, and the court predictably reached the same result on the grounds that "the

7

arbitration agreement functions as a prospective waiver of federal statutory rights and, therefore, is unenforceable as a matter of law." 856 F.3d at 333 (citing *Hayes*, 811 F.3d at 676.*).*

In *dictum*, *Hayes* noted a "brazen" disclaimer of both federal and state laws, but at no time did the court hold in either case that a limited waiver of state laws only would render an arbitration agreement unenforceable. 811 F.3d at 676; *see also Dillon*, 856 F.3d at 334 (waiver of state laws, *in addition to federal laws*, lent further support to the court's holding). Such question was not before the court and, even if it was, the result would be the same because the prospective waiver doctrine does not apply to waivers of state law. As the Fourth Circuit emphasized in both *Dillon* and *Hayes*, its main concern was with the obvious "animating purposes of the arbitration agreements" at issue in those cases "to ensure that [the lender] could engage in lending and collection practices *free from the strictures of any federal law*." *Dillon*, 856 F.3d at 334 (emphasis added) (citing *Hayes*, 811 F.3d at 676).

Here, the Arbitration Clause differs from the arbitration agreements in *Dillon* and *Hayes* in a critical respect, that is: the Arbitration Clause does not waive federal law in general or Plaintiff's substantive federal rights in particular. On the contrary, the waiver provision in the Loan Agreement here is expressly limited to the "United States *state* law," Compl. Ex. 2, at p. 9 (emphasis added), and the Arbitration Clause here states that arbitration is to be **governed by the FAA and, only if the FAA is found inapplicable by a court, then Plaintiff's state law governs**. *Id*. at p. 10. Clearly, prospective waiver is not implicated here because the Loan Agreement **does not** "waive [Plaintiff's] federal rights"—which are the only rights that Plaintiff seeks to vindicate through his claims for violations of the FDCPA—**and does not** "renounce the authority of the federal statutes.'" *Hayes*, 811 F.3d at 675; *see Jarry v. Allied Cash Advance Va., L.L.C.*, 175 F. Supp. 3d 622, 626 (W.D. Va. 2016) (distinguishing *Hayes* because the arbitration

8

clause applied to "any claim arising under … a federal or state statute" and thus did "not reject the wholesale application of federal and state law").

A holding that the Arbitration Clause which does not waive federal substantive rights and requires application of the FAA is unenforceable would directly contradict the controlling precedent by both the United States Supreme Court and the Fourth Circuit Court of Appeals that limit application of the prospective waiver doctrine to renunciation of federal substantive rights, not state laws. Accordingly, the second factor is satisfied.

### b. In the alternative, the choice of law provision in the Arbitration Clause is severable.

The Fourth Circuit Court of Appeals has held that, if a district court finds a provision in an arbitration agreement to be unenforceable, the court then must decide "whether severance of [such] provision[], rather than invalidation of the arbitration agreements, would be the appropriate remedy." *Atl. Textiles v. Avondale Inc.*, 505 F.3d 274, 292 (4th Cir. 2007) (citations omitted); *see also Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010) (stating that "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate").

Federal appellate courts nationwide have reached the same conclusion. *See, e.g.*, *Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1331 (11th Cir. 2005) ("If all the provisions of the arbitration clause are enforceable, then the court must compel arbitration according to the terms of the agreement. If, however, some or all of its provisions are not enforceable, then the court must determine whether the unenforceable provisions are severable."); *see also Kristian v. Comcast Corp.*, 446 F.3d 25, 64 (1st Cir. 2006) (severing provisions that precluded plaintiff from pursuing his statutory remedies and compelling arbitration); *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 478 (5th Cir. 2003) (severing an unenforceable

9

ban on punitive damages and compelling arbitration); *Spinetti v. Service Corp. Int'l*, 324 F.3d 212, 219-23 (3d Cir. 2003) (severing invalid provisions regarding attorney's fees and requiring the parties to arbitrate); *Gannon v. Circuit City Stores, Inc.*, 262 F.3d 677, 683 (8th Cir. 2001) (severing unenforceable ban on punitive damages and compelling arbitration).

As the Southern District of Florida explained, "two policy interests at issue … must be respected, if possible. The first is the powerful [policy] in favor of arbitration.  The second is the policy … to protect a party's right to pursue statutory remedies."  *Krstic v. Princess Cruise Lines, Ltd.*, 706 F. Supp. 2d 1271, 1280 (S.D. Fla. 2010) (severing the choice of law provision and compelling arbitration).  "[S]everance of the unenforceable choice-of-law provision is the appropriate remedy, as it promotes both policies at issue without having to unnecessarily elevate one over the other."  *Id.*; *see also Galen v. Redfin Corp.*, No. 14-cv-05229, 2015 U.S. Dist. LEXIS 161111, at *30 (N.D. Cal. Dec. 1, 2015) (severing feeshifting, forum selection, and choice of law clauses and delegating the question of arbitrability to the arbitrator).

In *Dillon* and *Hayes*, the Fourth Circuit Court of Appeals refused to sever the invalid choice of law provision on the grounds that the provision required application of the tribal law to the exclusion of *all state and federal laws* and, thus, such provision went to the "essence" and "animating purpose" of the contract to engage in consumer lending without federal regulation. *Hayes*, 811 F.3d at 676; *Dillon*, 856 F.3d at 335.  The Court in *Dillon* found further support for declining to sever based on the adhesive language in the contract that was "a calculated attempt to avoid the application of state and federal law." *Id*.

Unlike *Dillon* and *Hayes*, the Loan Agreement and the Binding Arbitration Clause do not attempt to avoid application of the federal consumer laws, as explained in more detail above; thus the choice of law provision does not go to the core of the contract, *i.e.*, to extend loans to

10

consumers, subject to federal consumer protection statutes. The choice of law provision is "merely collateral to the main purpose of the arbitration agreement," *Vargas v. Delivery Outsourcing, LLC*, No. 15-cv-03408-JST, 2016 U.S. Dist. LEXIS 32634, at *34 (N.D. Cal. Mar. 14, 2016), and if found to be unenforceable, should be severed.

In addition, the Arbitration Clause was not adhesive because it expressly provided Plaintiff with a choice of opting out of the Arbitration Clause within 60 days of signing the Loan Agreement. Compl. Ex. 2, p. 7, ECF 1-2.[1] As the Supreme Court observed in *AT&T Mobility, LLC*, although "[s]tates remain free to take steps addressing the concerns that attend contracts of adhesion, … [s]uch steps cannot … conflict with the FAA or frustrate its purpose to ensure that private arbitration agreements are enforced according to their terms." 563 U.S. at 347 n.6.

On balance, severance of the choice of law provision and enforcement of the arbitration clause will accomplish both of the important policies—presumption in favor of arbitration and avoidance of prospective waiver of federal substantive rights to the extent it is implicated here (and it is not)—without elevating one over the other. Accordingly, if the Court deems the choice of law provision unenforceable, the Court should sever this provision and compel arbitration.

3. **The loan transaction involves interstate commerce.**

Interstate commerce is implicated in a transaction, so long as "in the aggregate the economic activity in question would represent a general practice ... subject to federal control." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-57, 123 S.Ct. 2037, 156 L.Ed.2d 46 (2003) (internal quotation and citation omitted). "No elaborate explanation is needed to make evident

---

[1] The arbitration agreement in Hayes did not include any opt-out clause whatsoever, *Hayes*, 811 F.3d at 669-70, and, although an "opt-out" clause was ostensibly present in the arbitration agreement in *Dillon*, it had no force or effect because it still limited plaintiff to resolution of disputes under the tribal law within the tribal court system, 856 F.3d at 331. By contrast, the opt-out clause here provides Plaintiff with a choice of opting out of the Arbitration Clause.

11

the broad impact of commercial lending on the national economy or Congress's power to regulate that activity pursuant to the Commerce Clause." *Id*. It is also beyond dispute that consumer loans, like the one entered into by Plaintiff, are subject to federal laws and regulations because they affect interstate commerce. *See, e.g.*, 15 U.S.C. § 1602 (broadly defining "credit" for application of the federal Truth in Lending Act); *National Home Equity Mortg. Ass'n v. Face*, 64 F. Supp. 2d 584, 592 (E.D. Va. 1999) (recognizing that "the borrowing and lending of money is commerce that falls within Congress' broad commerce power."). Plaintiff is a citizen of Virginia while both Spotloan and AIS are located out of state. Thus, this loan transaction implicates interstate commerce and easily satisfies the third prong in support of compelling arbitration.

4. **Plaintiff refuses to arbitrate.**

The fourth prong—a refusal or failure to arbitrate—is also satisfied. Prior to filing this Motion, Defendant's counsel contacted Plaintiff's Counsel to inquire whether Plaintiff would consent to arbitration pursuant to the Arbitration Clause in the Loan Agreement signed by Plaintiff. Plaintiff's counsel responded that he did not consent to arbitration. Thus, the fourth prong—a refusal to arbitrate—has been met and arbitration is warranted.[2]

## CONCLUSION

For the reasons set forth above, Defendant American Infosource L.P. respectfully requests that the Court grant this Motion to Compel Arbitration and that the Court dismiss or stay this Action and grant AIS' attorney's fees and costs incurred in bringing this motion.

---

[2] Spotloan responded that it reserves the right to join AIS' Motion to Compel Arbitration.

Dated this 31 day of July, 2017.　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　　　**AMERICAN INFOSOURCE LP**


　　　　　　　　　　　　　　　　　　　　　　By: /s/ Jason E. Manning
　　　　　　　　　　　　　　　　　　　　　　　　　　Of Counsel

Jason E. Manning (VSB No. 74306)
Maryia Y. Jones (VSB No. 78645)
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone: (757) 687-7564
Facsimile: (757) 687-1524
E-mail: jason.manning@troutmansanders.com
E-mail: maryia.jones@troutmansanders.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of July, 2017, I electronically filed the foregoing *Memorandum in Support of Motion to Compel Arbitration* with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants

/s/ Jason E. Manning
Jason E. Manning (VSB No. 74306)
Maryia Y. Jones (VSB No. 78645)
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone: (757) 687-7564
Facsimile: (757) 687-1524
E-mail: jason.manning@troutmansanders.com
E-mail: maryia.jones@troutmansanders.com

*Counsel for American Infosource LP*

32040724